**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GAY MUSE** | **CIVIL ACTION** |
| **versus** | **NO. 09-0066** |
| **JAZZ CASINO CO., LLC dba HARRAH'S** | **SECTION "C" (2)** |

**ORDER AND REASONS[1]**

Before the Court is a Motion for Summary Judgment by Defendant Jazz Casino Co., LLC ("JCC"). (Rec. Doc. 52). Plaintiff Gay Muse ("Muse") opposes the motion. (Rec. Doc. 56). The motion is before the Court on the memoranda, without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the motion is GRANTED for the following reasons.

I.  **Background**

The female plaintiff, Muse, was employed by JCC from December 2000 to August 2004 as a cage supervisor at Harrah's Casino in New Orleans, Louisiana. (Rec. Doc. 52-2 at 2; Rec. Doc. 1). The duties she performed as cage supervisor included supervising other cage employees, balancing the cage bank (where chips are cashed out for money), lunch scheduling, and completing weekly reports. (Rec. Doc. 52-2 at 2-3). Between December 2000 and October 2003, Muse received nine written performance feedbacks concerning her job performance and JCC's attendance policy. (Rec. Doc. 52-2 at 37-46). In October 2003, Muse complained to two of her

---

[1] Emily Ross, JD candidate of Tulane University Law School, assisted in preparing this Order.

supervisors, Renee Fulkerson ("Fulkerson") and LaWanda Thompson ("Thompson") about another employee, Keisha Cunningham ("Cunningham") who Muse alleged was sexually harassing her. (Rec. Doc. 1).[2] In November 2003, four of Muse's co-workers witnessed Muse raising her voice and using improper language with Cunningham (which she later admitted). (Rec. Doc. 52-2 at 48). Following a formal investigation of the incident, Muse was written up with a final warning. (Rec. Doc. 52-2 at 48). Muse filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging discrimination based on sex and retaliation. (Rec. Doc. 52-2 at 47). Plaintiff brings this suit alleging that between the time she spoke to Thompson and Fulkerson about the sexual harassment in October 2003 until she was terminated in August 2004, Thompson retaliated against her for complaining about and later filing a charge of discrimination. (Rec. Doc. 1). Muse alleges that Thompson retaliated against her in the following ways: closely monitoring Muse's work and bathroom breaks, ridiculing Muse's remarks at weekly meetings, uniquely requiring her to clock in and out, uniquely requiring her to stay later than other cage workers to balance the cage, changing her shift hours at least three times in ten months, pulling Muse out of lunch to handle matters with the cage that other supervisors could have handled, "screaming at plaintiff for going to her car without a pager," denying plaintiff paid leave, and instituting rumors about plaintiff. (Rec. Doc. 18 at 2).

The plaintiff originally filed a suit claiming retaliatory harassment and retaliatory discharge, but amended the complaint to state only the retaliatory harassment claim. (Rec. Doc. 56). JCC

---

[2] Plaintiff repeatedly refers to Keisha Cunningham as Keisha Cummings in her deposition, initial complaint with this Court and her EEOC Charge of Discrimination. (Rec. Doc. 52-2 at 9; Rec. Doc. 1). However, the employee Muse is referring to is actually named Cunningham, so this Court will refer to her as Cunningham throughout. (Rec. Doc. 52-4 at 4, 13).

2

claims it is entitled to summary judgment because, under the facts set forth by plaintiff, she cannot establish a prima facie case of retaliation. (Rec. Doc. 61).

II. **Law and Analysis**

a. **Standard of Review**

Summary judgment should be granted to the moving party when the pleadings and other memoranda "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. EVID. 56 (c) (2). The non-moving party must respond to the motion of summary judgment and must "set out specific facts showing a genuine issue for trial." FED. R. EVID. 56 (e) (2). Additionally, in opposing a summary judgment motion, the non-moving party cannot merely rely on allegations made in the pleadings or on a declaration that impeaches prior sworn testimony without explanation. See Mitchell v. Snow, 326 Fed.Appx. 852, 857 (5th Cir. 2009); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996). The facts are viewed in the light most favorable to the party opposing the motion. Boze v. Branstetter, 912 F.2d 801, 804 (5th Cir. 1990).

b. **Title VII Standard**

Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate or retaliate against an employee because the employee has made a charge of discrimination against the employer under Title VII. 42 U.S.C.A. § 2000e-3(a); see also, Clark County School Dist. v. Breeden, 532 U.S. 268, 269 (2001). In order to state a claim for retaliation under Title VII, the plaintiff must establish that she engaged in a protected activity, that she suffered an adverse employment action and that a causal nexus existed between the protected activity and the adverse employment action. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). Plaintiff did engage in an activity protected by Title VII (namely, making a charge against her employer for

3

discrimination), however, JCC asserts that Muse cannot prove a genuine issue as to any material fact concerning the adverse employment action and causal nexus requirements and that the facts as presented are insufficient to prove these two elements. (Rec. Doc. 61 at 2-3).

   c. **Adverse Employment Action**

In Burlington Northern and Santa Fe Ry. Co. v. White, the Supreme Court expanded the anti-retaliation provision in Title VII to include more actionable harms than only those that encompass an "ultimate employment decision . . . such as hiring, granting leave, discharging, promoting, and compensating," which was the standard previously applied by the Fifth Circuit. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Mattern v. Eastman Kodak Co, 104 F.3d 702, 707 (C.A.5 1997)). Instead, a plaintiff must show that the employer's actions were materially adverse, that is, they would have dissuaded a reasonable employee from "making or supporting a charge of discrimination." Id. at 68. The Court emphasized, however, that this expansion does not give employees the right to recover for trivial harms, such as "petty slights or minor annoyances that often take place at work. . ." Id. Additionally, the Court noted that a claim for retaliatory harassment under Title VII must be analyzed in light of the particular circumstances of the case; in other words, "[c]ontext matters." Burlington Northern, 538 U.S. at 69. The plaintiff asserts that an Eastern District of Louisiana case using the Burlington standard, Hallberg v. Pendelton Memorial Methodist Hospital, upon which the defendant relies is erroneous. (Rec. Doc. 56 at 4); Hallberg v. Pendelton Memorial Methodist Hospital, 2006 U.S. Dist. LEXIS 77286. The plaintiff contends that the court in Pendleton held that in order to be actionable, retaliatory harassment must be "severe and pervasive." (Rec. Doc. 56 at 4). Unfortunately, the plaintiff plainly misstates the law, as the court in Hallberg actually held that in order to state a claim for *sexual harassment*, a plaintiff must

4

prove the harassment was severe and pervasive. See Hallberg, 2006 U.S. Dist LEXIS at *22-23. In this case, the plaintiff is stating a claim for *retaliatory harassment* that she claims she experienced because she complained of alleged sexual harassment. The correct reading of Hallberg demonstrates that the court in that case relied on the Supreme Court's standard in Burlington for the retaliatory harassment claim and held that the plaintiff had to show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Hallberg, 2006 U.S. Dist LEXIS at *26 (quoting Burlington Northern, 538 U.S. at 68).

Defendant argues that because the plaintiff actually did file a charge with the Equal Employment Opportunity Commission alleging discrimination, Thompson's behavior was not enough to dissuade her from making or supporting a charge. (Rec. Doc. 52-5 at 6). The plaintiff accurately points out that this assertion misses the mark, as the Supreme Court held that an employer's actions must be harmful enough that it *could* have dissuaded a *reasonable* person from making or supporting a charge of discrimination; the Court did not say that it needed to have actually dissuaded the employee. (Rec. Doc. 56 at 2); Burlington, 548 U.S. at 68. Even viewing the evidence in the light most favorable to the plaintiff, however, Thompson's actions do not rise to the level of material adversity; at best, they represent personality conflicts and petty slights, both of which are not actionable. Burlington, 548 U.S. at 68. First, in her sworn deposition, plaintiff admitted to being unsure if other employees were required to clock in and out, work on their lunch breaks, stay after work to balance their cages, got their shifts changed several times, failed to notify them of cancelled meetings, were denied paid leave, and that plaintiff had no personal knowledge of Thompson actually instituting rumors about her. (Rec.

Doc. 52-2 at 28-33). Because plaintiff cannot substantiate whether she was singled out for these actions by her supervisor, the only actions which she can say were directed to her are Thompson's close scrutiny of her work and bathroom breaks, Thompson's ridiculing remarks at meetings, and Thompson screaming at Muse for going to her car without a pager. None of these actions rise any higher than petty slights or inconveniences. Plaintiff also asserts in her opposition to summary judgment that the warnings she received after talking to her supervisors about the harassment should be considered part of Thompson's adverse actions because they lack a good faith basis. (Rec. Doc. 56 at 5) However, the plaintiff fails to provide any evidence (even a statement) as to why the actions lack a good faith basis, and the plaintiff does not provide any legal authority for concluding that warnings lacking good faith basis should be considered adverse actions. (Rec. Doc. 56 at 5).

The Fifth Circuit has held that a plaintiff whose personal belongings were taken from her desk, who could not shut her door because the locks were changed, who was chastised and ostracized by her co-workers and supervisors, and who was placed on administrative paid leave for three weeks and then reassigned to a new supervisor with a heavier workload had not experienced material adversity. Stewart v. Mississippi Trans. Comm., 586 F.3d 321, 321-322 (5th Cir. 2009). In that case, the court determined that as a matter of law, the first three actions constituted petty slights and minor annoyances, while the last two could have risen to the level of material adversity, but the plaintiff had presented no evidence that being put on paid leave and having her workload changed had adversely affected her. Id. at 332-333. Even taken all together and in context, it cannot be asserted that on these facts, the plaintiff here suffered more adversity than the plaintiff in Stewart. Additionally, the United States District Court for the Eastern District of Louisiana has held that a nurse whose co-worker shoved a wheel chair in her path, ran

6

into her shoulder several times, startled her with a fake arm, jumped out at her, sabotaged her work product several times to make her look bad, and threatened her job if he was promoted had not proven material adversity under the Burlington standard. See Hallberg v. Pendelton Memorial Methodist Hospital, 2006 U.S. Dist. LEXIS 77286 at *1, 3. The court in that case stated that the "retaliatory conduct here involved horseplay, which stemmed from general personal animosity" and therefore, it did not rise to the level of retaliatory harassment under Title VII. Id. at 27. The conduct complained of in Pendleton was far more interfering and pervasive than the conduct that Muse alleges in this case. Taken in the complete context of the situation, because plaintiff had received at least nine written performance feedbacks, including a "final warning" after which she was given more chances to follow the clear guidelines given to her, and given the lack of any substantiated evidence that Thompson targeted her because of anything other than her absences and behavior, the plaintiff has failed to establish that Thompson's actions are materially adverse. Because the plaintiff must support all three elements of a prima facie case of retaliation and the plaintiff here fails to support the claim that Thompson's conduct consisted of materially adverse actions, this Court need not address whether the allegedly adverse actions are causally related to Muse's protected behavior. However, it will note that the plaintiff has provided no evidence to link Thompson's behavior to Muse's complaint of sexual harassment.

Accordingly,

IT IS ORDERED that JCC's motion for summary judgment (Rec. Doc. 52) is

GRANTED. New Orleans, Louisiana, this 15th day of June, 2010.

HELEN G. BERRIGAN<br>UNITED STATES DISTRICT JUDGE